Jeanette Ord Sager, et al. [1] v. Commissioner. Sager v. Commissioner
Docket Nos. 82072, 82096, 82116, 82140.
United States Tax Court
T.C. Memo 1962-121; T.C. Memo 1962-121; 1962 Tax Ct. Memo LEXIS 187; 21 T.C.M. (CCH) 641; T.C.M. (RIA) 62121; 16 Oil & Gas Rep. 1079; May 21, 1962
*187 Petitioners, as partners in two partnerships, gave a fee simple deed to the mineral rights in certain lands held by the partnerships. The deed was made for a cash payment. The deed also provided for royalties to be paid upon the extraction of minerals but stated that no duty was imposed on the grantee to develop the properties. As of the time of trial, the grantee had not developed the properties for mineral production. Held: The petitioners did not retain an economic interest in the minerals; thus, the gain on the sale of the mineral rights was capital gain. Maud W. Olinger, 27 T.C. 93 (1956), and Charles H. Remer, 28 T.C. 85 (1957), affd. 260 F. 2d 337 (C.A. 8, 1958), followed. Frank M. Cavanaugh, Esq., First National Bank Bldg., Denver, Colo., for the petitioners. Arthur B. Bleecher, Esq., for the respondent. FAY
Memorandum Opinion FAY, Judge: The Commissioner determined deficiencies in income taxes of the petitioners for the year 1955, as follows: Addition to
Docket
tax under sec.
No.
Petitioner
Amount
6651(a), I.R.C. 1954
82072
Jeanette Ord Sager
$741.16
82096
M.C. and Marjorie O. Kaan
615.57
$30.78
82116
Harry C. and Anne Beasley Sager
400.77
82140
Roy and Gertrude Chamberlain
426.59
*188 Some of the issues have been conceded by the petitioners. The only issue remaining for decision is whether payments received by the petitioners pursuant to a mineral deed are capital gain or ordinary income. All of the facts are stipulated and are found as stipulated. The petitioners in each of docket numbers 82096, 82116 and 82140 are husband and wife and filed joint Federal income tax returns for the year 1955. All of the petitioners filed their Federal income tax returns for the year 1955 with the district director of internal revenue at Cheyenne, Wyoming. Petitioners Jeanette Ord Sager, Gertrude Chamberlain and Marjorie O. Kaan were partners in an enterprise called the Ord Ranch, located at Lusk, Wyoming. Also, petitioners Jeanette Ord Sager, Marjorie O. Kaan, Harry C. Sager and Gertrude Chamberlain were partners in a business known as the Agnew Ranch, located at Lusk, Wyoming. On July 18, 1955, the petitioners herein executed a deed granting the mineral rights to certain lands held by the partnerships. The properties involved in the deed were acquired by the partnerships in 1950 and 1952. The deed was made to the Colorado Fuel and Iron Corporation for a cash payment of *189 $20,404.03, of which $900 was received by the Ord Ranch and $19,504.03 was received by the Agnew Ranch. The deed provided that the grantors do hereby grant, sell, convey, transfer and set over unto THE COLORADO FUEL AND IRON CORPORATION, a Colorado corporation, of Denver, Colorado (hereinafter referred to as Grantee) all of the minerals of whatsoever kind, nature, or character in, under, and that may be produced from the following described lands, located in Goshen County, Wyoming: * * * TO HAVE AND TO HOLD, the above described property and easement with all and singular the rights, privileges and appurtenances thereto or in any wise belonging to the said Grantee herein and its successors, and assigns forever, and Grantor does hereby warrant said title to Grantee, its successors and assigns forever, and does hereby agree to defend all and singular the said property unto said Grantee herein, its successors and assigns, against every person whomsoever claiming or to claim the same or any part thereof. The deed also provided for royalties to be paid by the grantee to the grantor upon the extraction of minerals. Royalties of from 10 percent to 30 percent of the gross sales price *190 were to be paid for the extraction of uranium ore, depending on the U3O8 content of the ore. A royalty of 5" a ton of 2240 pounds was to be paid on merchantable iron ore extracted. A royalty of 12 1/2 percent of the value of all oil and gas produced and saved was reserved, and a royalty of 10 percent of net smelter returns, or 10 percent of sales price if sold in crude form, was provided for all other minerals. The following was also provided with respect to the reserved royalties: (b) In computing the amounts of royalty as provided hereinabove, Grantee may deduct a proportionate part of the actual cost of transportation from mine to smelter or to the mineral purchaser; the cost of custom milling and smelter charges and penalties, if any; and any gross production, severance, ad valorem, or other taxes which may be payable on account of said mineral or chargeable to the interest from which said royalty must be paid and for which said tax is assessed, it being provided, however, that no deductions for transportation, custom milling, and smelting charges and penalties shall be deducted with reference to iron ore. In the event that Grantor owns a less interest in the above described *191 lands or any portion thereof than the entire and undivided fee simple mineral estate therein, then the royalty as to said lands shall be paid only in the proportion which Grantor's interest therein bears to the whole and undivided mineral fee estate. It is agreed that Grantee shall not be required to pay royalty hereunder until it has received the proceeds from the sale of ores, minerals, or concentrates upon which said royalty is to be computed. The reservation of royalty hereunder shall not be deemed to create an obligation on the part of Grantee to perform any exploratory or mining operations on the lands above described. The records of the grantee-corporation show that as of the time of trial the lands described in the deed were not developed for the commercial production of minerals. The Ord Ranch and Agnew Ranch partnerships each reported the entire amount received for the deed as capital gain on their partnership information returns for 1955. All of the partners reported their shares of these sums as capital gain in the same year. By their deed, the petitioners made an absolute sale of the minerals and did not retain any economic interest in them. The respondent contends *192 that the sums paid upon the execution of the deed are advance royalties under a mineral lease and therefore are taxable as ordinary income rather than capital gain. It is the respondent's view that the provisions in the deed giving the petitioners royalty payments resulted in the retention of an economic interest in the minerals by the petitioners and that since the petitioners retained an economic interest the transfer must be treated as a mineral lease. The petitioners, on the other hand, urge that the mere fact that a royalty has been retained does not result in the retention of an economic interest in the property, citing . The petitioners contend, therefore, that by their deed they made an absolute sale of the minerals in the lands described in the deed and that the sums received on account of the deed should be treated as the sales price of the minerals. We must agree with the petitioners. In , the taxpayer transferred certain oil properties for several lump-sum payments and one-third of the net profits after the purchasers had received reimbursements for certain *193 expenses. The Supreme Court held that the taxpayer has made an absolute sale of the oil properties and thus was not entitled to depletion on the sums received for the transfer. This case has not been expressly overruled by the Supreme Court. Indeed, it was cited by them with approval in $ . In that case the Supreme Court said: "The facts of each transaction must be appraised to determine whether the transferor has made an absolute sale or has retained an economic interest - a capital investment." The facts of the present transaction are indicative of an absolute transfer. The transfer was made by a deed of the fee interest in the minerals and not by a lease. The deed expressly negated any duty on the part of the purchaser to develop the properties. The properties were not, at the time of trial, developed for the purpose of mineral production. Thus, we can see no distinction of substance between this case and the Elbe Oil Land Co. case. The respondent has argued that later cases from the Supreme Court are inconsistent with the Elbe Oil Land Co. case and that that case should be treated as overruled. We cannot *194 view these later opinions of the Supreme Court as granting us sufficient warrant to ignore a case which it has not overruled expressly. Accord, , and , affd. (C.A. 8, 1958). Decisions will be entered for the petitioners in Docket Nos. 82072 and 82116. Decisions will be entered under Rule 50 in Docket Nos. 82096 and 82140. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: M.C. and Marjorie O. Kaan, Docket No. 82096; Harry C. and Anne Beasley Sager, Docket No. 82116; and Roy and Gertrude Chamberlain, Docket No. 82140.↩