HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* ELBE OIL LAND DEVELOPMENT CO.

No. 446. Argued February 10, 1938.—Decided March 7, 1938.

*Assistant Solicitor General Bell,* with whom *Solicitor General Reed, Assistant Attorney General Morris,* and *Messrs. Sewall Key* and *Ellis N. Slack* were on the brief, for petitioner.

*Mr. George T. Altman* for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The question is whether certain payments received by respondent in the years 1928 and 1929 constituted "gross income from the property," within the meaning of that phrase as used in relation to oil and gas wells in § 114 (b) (3) of the Revenue Act of 1928, so as to entitle respondent to the prescribed depletion allowance. The Cir-

cuit Court of Appeals, reversing the decision of the Board of Tax Appeals (34 B. T. A. 333), sustained respondent's claim. 91 F. (2d) 127. Certiorari was granted because of an asserted conflict with the decision of the Circuit Court of Appeals for the Fifth Circuit in *Commissioner* v. *Fleming,* 82 F. (2d) 324.

Respondent is a California corporation which acquired certain properties consisting of oil and gas prospecting permits, drilling agreements, leases and equipment. Development work resulted in the discovery of oil. On October 3, 1927, respondent conveyed all its right, title and interest in the described properties to the Honolulu Consolidated Oil Company. The latter agreed to pay to respondent $350,000 upon the execution of the agreement and, if the Honolulu Company should not elect to abandon the purchase (in accordance with one of the stipulations), the additional sums of $400,000 in each of the years 1928, 1929 and 1930, and the further sum of $450,000 in 1931. After the time when the Honolulu Company had been fully reimbursed as provided in the agreement for all its expenditures in the acquisition, development and operation of the properties, respondent was to receive monthly one-third of the net profits resulting from the production and operation. After careful stipulations with respect to such reimbursement and the computation of net profits, the agreement provided:

"Anything in this agreement contained to the contrary notwithstanding, it is the intention of the parties to this agreement that the full ownership, possession and control of all the properties, the subject of this agreement, and of all of the personal property acquired and/or used on and in connection with the operation and development of the properties, the subject of this agreement, shall be vested in Honolulu, and Elbe shall have no interest in or to said properties or in or to any personal property used on or in connection with the operation or development of the said properties or in or to the salvage value of any thereof,

except as provided by paragraph 9" [relating to abandonment of the purchase and reconveyance].

The first payment of $350,000 was received by respondent in 1927 and being greater than the cost of all the properties transferred, respondent reported as taxable income the difference between that cost basis and the amount received. In its income tax returns for the years 1928 and 1929, respondent reported the payments of $400,000 received in each of the years and claimed 27½ per cent. thereof as an allowance for depletion. This is the claim which has been sustained below.

We agree with the conclusion of the Board of Tax Appeals that the contract between the respondent and the Honolulu Company provided for an absolute sale of all the properties in question, including all the oil and gas in place, and that respondent did not retain any interest or investment therein. The aggregate sum of $2,000,000 was paid as an agreed purchase price to which was to be added the one-third of the net profits payable on the conditions specified. We are unable to conclude that the provision for this additional payment qualified in any way the effect of the transaction as an absolute sale or was other than a personal covenant of the Honolulu Company. See *Helvering* v. *O'Donnell, ante,* p. 370. In this view, neither the cash payments nor the agreement for a share of subsequent profits constituted an advance royalty, or a "bonus" in the nature of an advance royalty, within the decisions recognizing a right to the depletion allowance with respect to payments of that sort. Such payments are made to the recipient as a return upon his capital investment in the oil or gas in place. See *Burnet* v. *Harmel,* 287 U. S. 103, 111, 112; *Murphy Oil Co.* v. *Burnet,* 287 U. S. 299, 302. Payments of the purchase price which are received upon a sale of oil and gas properties are in a different category. The words "gross income from the property," as used in the statute governing the allowance for depletion, mean gross in-

come received from the operation of the oil and gas wells by one who has a capital investment therein,—not income from the sale of the oil and gas properties themselves. See *Darby-Lynde Co.* v. *Alexander*, 51 F. (2d) 56, 59. We conclude that as respondent disposed of the properties, retaining no investment therein, it was not entitled to make the deduction claimed for depletion. *Palmer* v. *Bender*, 287 U. S. 551, 557; *Helvering* v. *Twin Bell Syndicate*, 293 U. S. 312, 321; *Thomas* v. *Perkins*, 301 U. S. 655, 661; *Helvering* v. *Bankline Oil Co., ante,* p. 362; *Helvering* v. *O'Donnell, supra.*

The judgment of the Circuit Court of Appeals is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*

Mr. Justice Cardozo and Mr. Justice Reed took no part in the consideration and decision of this case.