**COMMISSIONER OF INTERNAL REVENUE v. I. A. O'SHAUGHNESSY, Inc.**

**I. A. O'SHAUGHNESSY, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 2304, 2313.

Circuit Court of Appeals, Tenth Circuit.

Nov. 5, 1941.

Thomas E. Elcock, of Wichita, Kan. (Harry C. Castor and J. Paul Jorgensen, both of Wichita, Kan., on the brief), for taxpayer.

Harry Marselli, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Joseph M. Jones, Sp. Assts. to the Atty. Gen., on the brief), for the Commissioner.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The Commissioner of Internal Revenue and the taxpayer, I. A. O'Shaughnessy, Inc., have appealed from the decision of the Board of Tax Appeals. The appeals are based upon one record and are from one judgment, involving the application of Sections 23(m), 114(b) (3) of the Revenue Act of 1934, U.S.C. Tit. 26, §§ 23(m), 114 (b) (3), c. 277, 48 Stat. 680, 688, 710, 26 U.S.C.A. Int.Rev.Code, §§ 23(m), 114(b) (3),[1] to receipts from certain "in oil payment contracts" for the taxable year 1934.

The taxpayer is a Delaware corporation engaged in the oil and gas business. In 1933 and 1934, it acquired by purchase and

---

[1] Revenue Act of 1934, c. 277, 48 Stat. 680:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

"(m) Depletion. In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate (but not the basis for depletion) shall be revised and the allowance under this subsection for subsequent taxable years shall be based upon such revised estimate. In the case of leases the deductions shall be equitably apportioned between the lessor and lessee. \* \* \*" U.S.C., Title 26, § 23 (m), 26 U.S.C.A. Int.Rev.Code, § 23(m).

"§ 114. Basis for depreciation and depletion

\* \* \* \* \* \* \*

"(b) Basis for depletion

\* \* \* \* \* \*

"(3) Percentage depletion for oil and gas wells. In the case of oil and gas wells the allowance for depletion under section 23(m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23(m) be less than it would be if computed without reference to this paragraph." U.S.C., Title 26, § 114 (b) (3), 26 U.S.C.A. Int.Rev. Code, § 114(b) (3).

became the owner of eight "in oil payment" contracts. The eight contracts are similar in form and identical in substance, typical of which is the contract entered into on January 19, 1934, with the Hugh Hodges Drilling Company, by the terms of which the taxpayer advanced to the Hugh Hodges Drilling Company the sum of $25,821.53, in consideration of which the Hugh Hodges Drilling Company executed an instrument, the material portion of which is as follows: "Now, Therefore, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations, the receipt of which is hereby acknowledged, the undersigned Hugh Hodges Drilling Company, a corporation, does hereby grant, sell, bargain, convey and set over unto I. A. O'Shaughnessy, Inc., a corporation, an oil payment of One Hundred Thousand ($100,000.00) Dollars to be paid out of the first oil and/or gas produced from three-eighths (⅜) of the working interest under the aforesaid lease covering the above described property, as, if and when the same is produced, saved and sold." The other contracts, the date, the name of the well (which also indicates the contracting party), the amount of the payment, the cost and the amounts received from the production of oil in the years 1933 and 1934, together with the totals, are set forth in the margin.[2]

The questions presented for our decision are (1) whether the taxpayer as the owner of the contractual right to receive the amounts designated in the respective contracts from a designated fractional part of the working interest in the oil and gas leases, acquired a depletable interest under §§ 23(m), 114(b) (3) of the Revenue Act of 1934, supra, and (2) if the interest so acquired is depletable under §§ 23(m), 114 (b) (3), is the taxpayer entitled first to recoup or recover the entire cost of acquisition from the income derived from the production of oil and gas under the contracts, and thereafter to take the statutory depletion granted by §§ 23(m), 114(b) (3).

The Board held that the taxpayer did not, by the contracts, acquire a depletable interest under §§ 23(m), 114(b) (3), but the taxpayer was entitled to recoup his cost of acquisition from the income tax-free, after which he was not entitled to any depletion allowance. From the ruling of the Board that the rights granted under the contracts did not amount to an economic interest in the oil in place, subject to the depletion allowance, the Commissioner has appealed. From the ruling of the Board denying statutory depletion after recoupment of cost, the taxpayer has appealed.

It would serve no useful purpose to review in detail the uncertain and confusing course marked by the many conflicting decisions by the Board and courts construing and applying §§ 23(m), 114(b) (3) to the various forms of conveyances used in effecting the transfer of an economic interest in oil and gas properties. See Paul & Mertens Law of Federal Income Taxation, Sec. 21.18.

Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489, cleared away much of the underbrush by the announcement of the "economic interest" rule. Under the economic interest rule, depletion allowance did not depend upon the "niceties of legal title," but upon the basic question of whether by the instrument relied upon, the owner thereof acquired a beneficial or equitable interest in the oil, the income from which was dependent upon its production and sale. If the realization of income was contingent solely upon the production and sale of the oil, without personal obligation on the part of the grantor, the owner of that interest acquired an economic interest in the oil in place, subject to the hazards

---

2

| Date | | Oil Payment | Cost | Received 1933 | Received 1934 |
|---|---|---|---|---|---|
| 7-20-33 | Robert M. Murray No. 1 | $ 38,905.98 | $ 19,452.99 | $19,138.03 | $ 18,107.92 |
| 6- 8-33 | Harrell-Davis No. 1 | 51,230.00 | 25,000.00 | 18,394.73 | 22,426.07 |
| 9-14-33 | Harrell-Davis No. 2 | 250,000.00 | 125,000.00 | 2,755.70 | 73,699.61 |
| 9-15-33 | Helmerich & Payne No. 1 | 49,297.76 | 24,348.88 | ........ | 17,041.96 |
| 9-15-33 | Helmerich & Payne No. 2 | 23,499.70 | 23,499.70 | ........ | ........ |
| 9-15-33 | Helmerich & Payne No. 3 | 27,357.38 | 13,678.69 | ........ | 11,693.91 |
| 1-19-34 | Wastika Oil & Drl. Co. No. 1 | 100,000.00 | 30,872.09 | ........ | 20,428.40 |
| 1-19-34 | Hugh Hodges Drl. Co. No. 1 | 100,000.00 | 25,821.53 | ........ | 9,682.13 |
| | | $540,310.82 | $267,973.88 | $40,288.46 | $173,080.00 |

and uncertainties incident to its recovery and therefore subject to depletion under §§ 23(m), 114(b) (3).

It is sufficient to say that the boundaries of "depletable interest" under §§ 23(m), 114(b) (3) are now definitely fixed by the decisions of the Supreme Court of the United States, beginning with Palmer v. Bender, supra, and ending with Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277. See, also, Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383; Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324; Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 83 L.Ed. 897; Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903; Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904; Helvering v. Mountain Producers Corporation, 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907; Paul & Mertens Law of Federal Income Taxation, Sec. 21.18-20-24.

In Helvering v. Bankline Oil Company, supra, the court said [303 U.S. 362, 58 S. Ct. 618, 83 L.Ed. 897]: "In order to determine whether respondent is entitled to depletion with respect to the production in question, we must recur to the fundamental purpose of the statutory allowance. The deduction is permitted as an act of grace. It is permitted in recognition of the fact that the mineral deposits are wasting assets and is intended as compensation to the owner for the part used up in production. * * * It is true that the right to the depletion allowance does not depend upon any 'particular form of legal interest in the mineral content of the land.' We have said, with reference to oil wells, that it is enough if one 'has an economic interest in the oil, in place, which is depleted by production'; that 'the language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital.' Palmer v. Bender, supra. But the phrase 'economic interest' is not to be taken as embracing a mere economic advantage derived from production, through a contractual relation to the owner, by one who has no capital investment in the mineral deposit. See Thomas v. Perkins, 301 U.S. 655, 661, 57 S.Ct. 911, 913, 81 L.Ed. 1324."

In Anderson v. Helvering, supra, the cleavage between a depletable interest and a nondepletable interest was more clearly defined in the following language [310 U.S. 404, 60 S.Ct. 956, 84 L.Ed. 1277]: "And the fact that the payments to Oklahoma Company are in cash rather than directly in oil is of no moment in determining the issues presented for decision. * * * Similarly, the retention of a lien, if it were construed as a lien only upon the oil and gas production, and nothing more, would not make Oklahoma Company any the less dependent upon such production for payment of the amounts reserved. The reservation of an interest in the fee, in addition to the interest in the oil production, however, materially affects the transaction. Oklahoma Company is not dependent entirely upon the production of oil for the deferred payments; they may be derived from sales of the fee title to the land conveyed. It is clear that payments derived from such sales would not be subject to an allowance for depletion of the oil reserves, for no oil would thereby have been severed from the ground; an allowance for depletion upon the proceeds of such a sale would result, contrary to the purpose of Congress, in a double deduction—first, to Oklahoma Company; second, to the vendee-owner upon the production of oil. Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 321, 55 S.Ct. 174, 178, 79 L.Ed. 383. We are of opinion that the reservation of this additional type of security for the deferred payments serves to distinguish this case from Thomas v. Perkins [supra]."

Thus, it is made abundantly clear that one who acquires by contract, in whatever form, a right to the production from an oil and gas well, or the proceeds thereof until a stipulated amount has been paid, without any other or further security except the contingency of the production, thereby becomes the owner of an economic interest in oil in place, depletable under §§ 23(m), 114(b) (3).

Since Anderson v. Helvering, supra, the Board of Tax Appeals has recognized this rule in Hugh Hodges Drilling Company v. Commissioner, 43 B.T.A. 1045, and has expressly repudiated its holding in this case.

The question remains, how shall we apply the depletion allowance. The taxpayer contends that under the "fundamental" doctrine of Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 552, 75 L.Ed. 1143, it is "entitled to recover its cost out of its first receipts

because they cannot constitutionally be taxed" and "because nothing less than this is a reasonable allowance to it for depletion under the applicable provisions of the Revenue Act."

Burnet v. Logan, supra, announces the abstract rule that "In order to determine whether there has been gain or loss, and the amount of the gain if any, we must withdraw from the gross proceeds an amount sufficient to restore the capital value that existed at the commencement of the period under consideration." But it is significant to note that the court also said: "We are not dealing with royalties or deductions from gross income because of depletion of mining property."

Historically, the depletion statutes are arbitrary allowances to the recipients of gross income by reason of their capital investment in the oil or gas in place. Palmer v. Bender, supra; Helvering v. Bankline Oil Co., supra. The percentage allowance or "reasonable allowance" is of the gross income from the property which points only to the income from oil and gas and is correlated to an investment in oil and gas in place. Helvering v. Twin Bell Oil Syndicate, supra. The formula prescribed by §§ 23(m), 114(b) (3), having direct relationship to gross income from sources within its scope (oil and gas wells), is exclusive in its application and to that extent it is an arbitrary substitute for the fundamental rule against the taxing of gross income before recovery of capital cost. The taxpayer contends for a rule which would allow 100% depletion until the cost is returned, then a "reasonable allowance" or 27½%, whichever is greater, on the realization of income thereafter. Obviously, it was not the intention of Congress in providing the depletion allowance to grant any such advantage over those not falling within this category.

Statutory depletion is a "rule of thumb" to meet a special case. Helvering v. Twin Bell Oil Syndicate, supra; Helvering v. Mountain Producers Corporation, supra. It is clear that it was the Congressional purpose to allow return of capital through statutory depletion from the date of the acquisition of the depletable interest, so long as gross income is realized dependent upon the production of oil or gas. Likewise, it is plain that the taxpayer may not be deprived of this privilege, although the Commissioner may have erroneously permitted a deduction for cost recovery by some other formula not now subject to adjustment by reason of the statute of limitations.

We hold that when the taxpayer became the owner of these contracts, he thereby acquired a depletable economic interest. Palmer v. Bender, supra; Anderson v. Helvering, supra. The cost of the depletable interest represented a capital investment and he is entitled to a return of that capital investment under the provisions of Sec. 23(m) by a "reasonable allowance" as prescribed by Regulations 86, Article 23(m)-2, or Section 114(b) (3)[3] by a percentage allowance as prescribed by Regulations 86, Article 23(m)-4,[4] whichever is greater.

The decision of the Board of Tax Appeals is reversed and the cases are remanded with directions to proceed in accordance with the views herein expressed.

---

[3] Art. 23(m)-2. Computation of Depletion of Mines, Oil and Gas Wells, and Other Natural Deposits without Reference to Discovery Value or Percentage Depletion.

\* \* \* \* \* \* \*

If the amount of the basis as adjusted applicable to the mineral deposit has been determined for the taxable year, the depletion for that year shall be computed by dividing that amount by the number of units of mineral remaining as of the taxable year, and by multiplying the depletion unit, so determined by the number of units of mineral sold within the taxable year. In the selection of a unit of mineral for depletion, preference shall be given to the principal or customary unit or units paid for in the products sold, such as tons of ore, barrels of oil, or thousands of cubic feet of natural gas.

[4] Art. 23(m)-4. Computation of Depletion Based on a Percentage of Income in the Case of Oil and Gas Wells. —Under Section 114(b) (3), in the case of oil and gas wells, a taxpayer may deduct for depletion an amount equal to 27½ per cent of the gross income from the property during the taxable year, but such deduction shall not exceed 50 per cent of the net income of the taxpayer (computed without allowance for depletion) from the property. \* \* \* In no case shall the deduction computed under this paragraph be less than it would be if computed upon the cost or other basis of the property provided in section 113 [23(m)].