**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Charles H. REMER and Dorothy A. Remer, Respondents.**

**No. 16003.**

United States Court of Appeals Eighth Circuit.

Nov. 5, 1958.

Marvin W. Weinstein, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Melva M. Graney, Attorneys, Department of Justice, Washington, D. C., on the brief), for petitioner.

Hayner N. Larson, Minneapolis, Minn. (Amasa E. Wheeler, Duluth, Minn., and Faegre & Benson, Minneapolis, Minn., on the brief), for respondents.

Before GARDNER, Chief Judge, and VOGEL, and MATTHES, Circuit Judges.

GARDNER, Chief Judge.

This matter is before us on a petition to review decisions of the Tax Court of the United States. The case involves alleged deficiencies in income tax for the years 1947 to 1952, inclusive. The facts are not in dispute but were stipulated and found by the Tax Court as stipulated. So far as material to the issues here presented they may be stated as follows:

Respondents Charles H. Remer and Dorothy A. Remer at all times here material were husband and wife and during the years in question, except for the year 1947, they made joint income tax returns. So far as appears, however, the income involved was that of Charles H. Remer. On July 10, 1946, Charles H. Remer acquired from the State of Minnesota two stockpiled iron ore mining leases substantially identical in form except as to the property described therein. After holding these leases for more than six months he sold and assigned to the Charleson Iron Mining Company all rights to the leases in consideration of payments of $100,000 in 1947, $50,000 in 1948, and $50,000 in 1949, plus the sum of ten cents per ton for concentrates shipped from the leased properties. The assignments contained provision as follows:

"1. Party of the first part does hereby sell, assign, transfer and set over unto the said party of the second part, its successors and assigns, said stockpiled Iron ore mining lease No. ISP–201 and does hereby convey and grant unto said party of the second part, its successors and assigns, the leasehold estate created thereby, and the said party of the first part, for himself, his administrators, heirs, executors and assigns, does hereby covenant unto and with the said party of the second part, its successors and assigns, that he, the party of the first part, at the time of the making and delivery of this indenture is the owner of said stockpiled iron ore mining lease as lessee therein, and is well seized of the said leasehold estate and has a good and perfect title to the same; that the same is free from all liens and incumbrances; that said stockpiled iron ore mining lease is in full force and effect, valid and subsisting and not subject to forfeiture or termination by the lessor therein; and that the party of the first part, his administrators, executors, heirs and assigns, will warrant and defend the party of the second part, its successors and assigns, in the quiet and peaceable possession of said leasehold estate against any and all persons claiming or to claim the same or any part thereof.

"2. The party of the second part hereby accepts said assignment and

covenants and agrees to indemnify, protect and save harmless the first party against any liability hereafter accruing under said stockpiled iron ore mining lease."

Charles H. Remer purchased the leases for the sum of $3,472.15. The taxpayers, in their income tax returns for the years involved, reported the difference between the amount of the investment and the amounts received on the sale of the leases as capital gains. The Commissioner, however, assessed deficiencies on the theory that the amount received in excess of the investment was ordinary income. The Tax Court held that the assignments of the two stockpiled iron ore leases were absolute sales and that the profits arising therefrom were capital gains. 28 T.C. 85. The question presented on the petition for review is whether the assignments involved were absolute sales of the leases or were, for tax purposes, subleases.

It is contended by the Commissioner that the test to be applied in the instant case is whether the transferor retained an economic interest in the property transferred and he contends that Charles H. Remer retained such economic interest in the property so transferred and hence the profit derived constitutes ordinary income. Assuming, without deciding, that this is the proper test, it is necessary to consider the nature of the instruments by which the taxpayer transferred and assigned the stockpiled iron ore leases here involved; in other words, did Charles H. Remer retain an economic interest in the property sold and transferred to the Charleson Iron Mining Company? It goes without saying that if this was a case where profits resulted from an ordinary sale of the property, the taxpayers properly reported the profits as capital gain. The written assignments were in the language of an absolute sale under warranty of title and contained no provision retaining any interest in the property so sold. The provision in the assignments for the payment of ten cents per ton on such concentrates as might be shipped im-

posed no obligation on the transferee to ship any ore, and the transferor retained no interest in the ore in place. The consideration to be paid was definite and absolute and the provision with reference to paying ten cents per ton for the ore shipped was simply a method of measuring the added consideration to be paid. The transferor had the bare right to payments measured by production. This did not, we think, result in the transferor retaining an economic interest in the property sold. It was merely a covenant on behalf of the transferee to pay additional consideration to the transferor. Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324; Helvering v. Elbe Oil Land Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904; Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903; Hofferbert v. Briggs, 4 Cir., 178 F.2d 743; Vermont Transit Co. v. Commissioner Internal Revenue, 2 Cir., 218 F.2d 468; Maude W. Olinger, 27 T.C. 93.

In Helvering v. Elbe Oil Land Co., supra, the facts are very similar to those in the instant case. In that case the taxpayer owned mineral leases which it transferred to another for a substantial cash down-payment, additional fixed substantial annual cash payments unconditionally payable unless a right of abandonment were exercised by the transferee, and one-third of net profits realized from production; power of decision whether to operate the properties was lodged exclusively in the transferee. The issue was whether, as asserted by the taxpayer, it was entitled to a deduction for depletion in respect of the fixed unconditional cash payments. It was held that it was not, on the ground that the provision for payments measured by production profits did not retain for the transferor an economic interest in the property by divesting him of something less than complete title. In the course of its opinion the Supreme Court said [303 U.S. 372, 58 S.Ct. 622]:

"We agree with the conclusion of the Board of Tax Appeals that the contract between the respondent and

the Honolulu Company provided for an absolute sale of all the properties in question, including all the oil and gas in place, and that respondent did not retain any interest or investment therein. The aggregate sum of $2,000,000 was paid as an agreed purchase price to which was to be added the one-third of the net profits payable on the conditions specified. We are unable to conclude that the provision for this additional payment qualified in any way the effect of the transaction as an absolute sale or was other than a personal covenant of the Honolulu Company. See Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903."

The teaching of this case clearly precludes the conclusion that Charles H. Remer retained an economic interest in the property transferred. The transferee became the absolute owner of these leases.

In Hofferbert v. Briggs, supra, the owner of a patent transferred his patent in consideration of royalty payments. There, as here, it was contended that the profits arising from the transaction constituted ordinary income. Answering this contention, the court said [178 F. 2d 744]:

"The rule is well settled that where the owner of patents and the inventions transfers them in consideration of royalty payments, such payments are properly treated as capital gains realized upon the sale of capital assets. * * *

"* * * Payment for the transfer of a capital asset does not suffer a change of character because made after the transfer or because made in addition to a prior consideration. * * *"

A bare right measured by production does not constitute an economic interest. This is made clear by what is said by the Supreme Court in Palmer y. Bender, 287 U.S. 551, 53 S.Ct. 225, 227, 77 L.Ed. 489, relied upon by petitioner. In that case the court found that the transferors had retained an interest in the oil and gas leases transferred and had "complete legal control of the oil in place" and were entitled to share in the oil produced. This clearly distinguishes this case from the case at bar and the clear inference to be drawn from what is said by the court is that if the transferors had not retained an interest in the property transferred then they would not have been entitled to depletion. Applying the same rule to the instant case, the transferor's tax liability is based upon a capital gain and not upon ordinary income.

Many cases are cited by petitioner but we think they may all be distinguished on their facts. In each of the cases the transferor retained some right or interest in the property transferred. We are in accord with what is said in the opinion of the Tax Court in the instant case as follows:

"We have carefully studied all of the cases cited by the parties. They are numerous and some are relied on by both parties. To analyze each and point out distinctions would needlessly prolong this opinion. It is sufficient to say that we think the facts in Helvering v. Elbe Oil Land Co., 303 U.S. 372 [58 S.Ct. 621, 82 L.Ed. 904], and Maude W. Olinger, supra, bring those cases closer to this case than any of the others cited. In both of those cases it was indicated that where mineral leases were transferred with large initial payments, sales resulted despite the fact that the transferor was also to receive deferred payments measured by a percentage of profits or a specified payment per unit of ore extracted."

We are of the view that the issues in this case were properly resolved by the Tax Court in favor of the taxpayers and its decisions are therefore affirmed.