**UNITED STATES of America,**
**Appellant,**

v.

**Paul WHITE and Anna Lee White,**
**Appellees.**

**No. 6974.**

United States Court of Appeals
Tenth Circuit.

Dec. 31, 1962.

---

Robert L. Waters, Attorney, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attorneys, Washington, D. C., Lawrence M. Henry, U. S. Atty., and Merle R. Knous, Asst. U. S. Atty., Denver, Colo., on the brief), for appellant.

Stanley L. Drexler, Denver, Colo. (Ellis J. Sobol, Denver, Colo., on the brief), for appellees.

Before PICKETT, BREITENSTEIN and HILL, Circuit Judges.

PICKETT, Circuit Judge.

This tax refund case presents the question of the appropriate treatment, for purposes of federal income taxation, of a $175,000 payment received upon a transfer of a mineral interest in Colorado lands. In their joint federal income tax return for 1956, the taxpayers, Paul White and Anna Lee White, reported the payment as income from the sale of a capital asset pursuant to Sections 1201 and 1202 of the Internal Revenue Code of 1954. A deficiency was assessed on the theory that this sum constituted ordinary income, and, after paying the tax and filing a claim for refund, which was disallowed, the Whites brought this suit to recover the amount of the tax paid, plus interest. The district court held that the transfer did not have the characteristics of a lease, but "was intended to be a true conveyance in fee of the minerals within and underlying the land described in the deed", and that the consideration received therefor was a capital gain for income tax purposes. Judgment was entered accordingly, and the United States appeals.

The essential facts are not in dispute. In 1924 the taxpayers bought some land in Jefferson County, Colorado. About 1953 or 1954, one Schwartzwalder, an amateur geologist, discovered a valuable uranium deposit on a quarter section of the Whites' land. He entered into a mineral lease with the Whites in February 1955, but it subsequently became apparent that Schwartzwalder was unable to satisfactorily develop the property for the production of minerals. Reliable surveys indicated that the lands contained uranium deposits valued at approximately $1,000,000, and Schwartzwalder and the Whites agreed that it would be to their best interests to find responsible third parties to mine and market this deposit. Ultimately, it was agreed that the minerals, together with Schwartzwalder's leasehold, should be sold to Denver-Golden Oil and Uranium Company, a Colorado corporation.

The Whites' interest was transferred on February 16, 1956, by an instrument

entitled "Mineral Deed". This deed, with the usual warranty of title, recites that the Whites "have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell, convey and confirm unto" Denver-Golden Oil and Uranium Company, "its successors and assigns forever, all and each of the ores and minerals, of whatsoever class or kind, EXCEPT oil, gas, casinghead gas or other gaseous or vaporous substances," on the aforesaid quarter section of land. As a consideration for this transfer the Whites received $175,000 and "a royalty of ten per centum (10%) of the gross value of all minerals mined, marketed and sold from the premises, said gross value being determined by payments received for all ores including bonuses and freight allowances but after deduction of actual costs of milling, smelting, treatment, cost of transporting the ores, and imposition of penalties of [sic] any; * * *." The provisions of the deed did not require the grantee to mine or develop the mineral interest in any manner, nor did the grantor retain any reversionary rights to the minerals conveyed. At the same time, Schwartzwalder, with the consent of the Whites, assigned his lease interest in the property to Denver-Golden Oil and Uranium Company for $275,000.

Relying on Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199, and like cases, the United States insists that the $175,000 is taxable as ordinary income subject to the allowance for depletion. The government asserts that, by virtue of the reservation of the so-called "royalty," the taxpayers retained an "economic interest" in the property. Its position is that, regardless of the circumstances, the effect of reserving or retaining an "economic interest" in a transfer of minerals is that all amounts, including a lump sum payment, received by the transferor constitute ordinary income.

The Supreme Court has considered and utilized the concept of an "economic interest" in a number of cases involving mineral properties. E. g., Parsons v. Smith, 359 U.S. 215, 79 S.Ct. 656, 3 L.

Ed.2d 747; Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347; Burton-Sutton Oil Co. v. Commissioner, 328 U.S. 25, 66 S.Ct. 861, 90 L.Ed. 1062; Kirby Petroleum Co. v. Commissioner, 326 U.S. 599, 66 S.Ct. 409, 90 L. Ed. 343; Anderson v. Helvering, 310 U. S. 404, 60 S.Ct. 952, 84 L.Ed. 1277; Helvering v. Elbe Oil Land Dev. Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904; Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903; Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S. Ct. 616, 82 L.Ed. 897; Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324; Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489. Although the issue presented in these cases was uniformly whether the taxpayer was entitled to depletion allowances on periodic payments received by virtue of an interest in mineral producing properties, or, alternatively, whether certain income from mineral production should be attributed to one taxpayer or another, the principle of "economic interest" has been seized upon as dispositive in reaching a correct solution to all problems involving the taxation of transfers of mineral interests. E. G., Laudenslager v. Commissioner, 3 Cir., 305 F.2d 686; Albritton v. Commissioner, 5 Cir., 248 F.2d 49; Hamme v. Commissioner, 4 Cir., 209 F.2d 29, cert. denied 347 U.S. 954, 74 S.Ct. 679, 98 L.Ed. 1099; Gray v. Commissioner, 5 Cir., 183 F.2d 329; Choate v. Commissioner, 10 Cir., 141 F.2d 641, reversed on another point 324 U.S. 1, 65 S.Ct. 469, 89 L.Ed. 653; Hogan v. Commissioner, 5 Cir., 141 F.2d 92, cert. denied 323 U.S. 710, 65 S.Ct. 36, 89 L.Ed. 571; Commissioner of Internal Revenue v. I. A. O'Shaughnessy, Inc., 10 Cir., 124 F.2d 33. Cf. McLean v. Commissioner, 5 Cir., 120 F.2d 942, cert. denied 314 U.S. 670, 62 S.Ct. 138, 86 L.Ed. 536; Cullen v. Commissioner, 5 Cir., 118 F.2d 651.

The depletion and income allocation cases are not the final word in determining the appropriate tax treatment of transfers of mineral interests. Barker v. Commissioner, 2 Cir., 250 F.2d

195; Robert M. Dann, 30 T.C. 499. The extent of the holding in Burnet v. Harmel, supra, is that bonuses, or royalties, from oil and gas leases are not income from the sale of capital assets within the meaning of the capital gains provisions of the taxing statute. However, as the Supreme Court said in Helvering v. Bankline Oil Co., supra, 303 U.S. at 367, 58 S.Ct. at 618:

"(T)he phrase 'economic interest' is not to be taken as embracing a mere economic advantage derived from production through a contractual relation to the owner, by one who has no capital investment in the mineral deposit. See Thomas v. Perkins, 301 U.S. 655, 661 [57 S.Ct. 911, 81 L.Ed. 1324]."

See Commissioner of Internal Revenue v. Remer, 8 Cir., 260 F.2d 337. In Helvering v. Elbe Oil Land Dev. Co., supra, 303 U.S. at 375, 58 S.Ct. at 622, in considering a factual situation much like the one here, the Supreme Court said:

"We agree with the conclusion of the Board of Tax Appeals that the contract between the respondent and the Honolulu Company provided for an absolute sale of all the properties in question, including all the oil and gas in place, and that respondent did not retain any interest or investment therein. The aggregate sum of $2,000,000 was paid as an agreed purchase price to which was to be added the one-third of the net profits payable on the conditions specified. We are unable to conclude that the provision for this additional payment qualified in any way the effect of the transaction as an absolute sale or was other than a personal covenant of the Honolulu Company. See Helvering v. O'Donnell [303 U.S.], ante, p. 370 [58 S.Ct. 619, 82 L.Ed. 903]. In this view, neither the cash payments nor the agreement for a share of subsequent profits constituted an advance royalty, or a 'bonus' in the nature of an advance royalty, within the decisions recog-

nizing a right to the depletion allowance with respect to payments of that sort. Such payments are made to the recipient as a return upon his capital investment in the oil or gas in place. See Burnet v. Harmel, 287 U.S. 103, 111, 112 [53 S.Ct. 74, 77 L.Ed. 199]; Murphy Oil Co. v. Burnet, 287 U.S. 299, 302 [53 S.Ct. 161, 77 L.Ed. 318]. * * *"

It is apparent from the quoted language that the Supreme Court has not intended that the Palmer v. Bender, supra, theory of economic interest is to govern all transfers of mineral interests involving future payments to be made from production. See West v. Commissioner, 5 Cir., 150 F.2d 723, cert. denied 326 U.S. 795, 66 S.Ct. 488, 90 L.Ed. 484.

■ In another group of cases the federal courts, including the Tax Court, have relied upon a finding as to the intent of the parties, their dominant purpose in entering into the transaction, or the true substance of the transaction, in holding that sales of mineral interests were effected so that taxation of the proceeds was governed by the capital gains provisions. Linehan v. Commissioner, 1 Cir., 297 F.2d 276; Barker v. Commissioner, supra; Crowell Land and Mineral Corp. v. Commissioner, 5 Cir., 242 F.2d 864; Robert M. Dann, supra. Cf. Albritton v. Commissioner, supra. Several cases have reached results on facts similar to the instant case which lead to a conclusion that the transfer made here was an outright sale, and that the provision for sharing in subsequent production did not necessarily characterize the cash payment as an advance royalty or a bonus in the nature of an advance royalty. Maude W. Olinger, 27 T.C. 93. Cf. Griffith v. United States, D.Wyo., 180 F. Supp. 454. See Commissioner of Internal Revenue v. Remer, supra; Gowans v. Commissioner, 9 Cir., 246 F.2d 448. The Whites retained no investment or interest, economic or otherwise, in the minerals in place. The purchaser was free to remove the minerals, or not, as it saw fit. If there was production, the taxpayer was entitled to an additional pay-

ment. In this context the economic interest principle advanced by the United States is wholly a legal fiction. We hold that there was a sale of the minerals, and that the $175,000 payment as part of the consideration therefor, was properly treated as a capital gain for income tax purposes. We do not reach the question of whether the payments to be made from production amount to the reservation of an economic interest which would require a different tax treatment of the income from that source. See United States v. Witte, 5 Cir., 306 F.2d 81.

Affirmed.