**UNITED STATES of America,
Appellant,**

v.

**Paul R. WHITE and Anna Lee White,
Appellees.**

**No. 9174.**

United States Court of Appeals
Tenth Circuit.

Sept. 30, 1968.

Grant W. Wiprud, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Jonathan S. Cohen, Attys., Dept. of Justice, Washington, D. C., Lawrence M. Henry, U. S. Atty., and David I. Shedroff, Asst. U. S. Atty., of counsel, with him on the brief), for appellant.

Stanley L. Drexler, Denver, Colo. (Ellis J. Sobol, Denver, Colo., with him on the brief), for appellees.

Before MURRAH, Chief Judge, and LEWIS, BREITENSTEIN, HILL, SETH, and HICKEY, Circuit Judges.

SETH, Circuit Judge.

This is an action for refund of federal income taxes paid for the calendar years 1959 through 1962, in the amount of $73,600.96. We considered a portion of this same transaction involving the same taxpayers in United States v. White, 311 F.2d 399 (10th Cir. 1962).

The primary issue on appeal concerns the correctness of the trial court's conclusion that certain royalty payments were taxable as long term capital gain rather than as ordinary income subject to depletion.

The record shows that uranium was discovered on the taxpayers' fee land in 1953, and they leased it to an individual. The lessee was unable to fully develop the property, and it was concluded that the minerals, together with the mineral lease, should be transferred to Denver-Golden Oil and Uranium Company. Taxpayers so transferred their mineral interest by a mineral deed, which contained

the usual warranties of title, and was in the form of an absolute conveyance of the minerals except coal, oil and gas. This deed, however, retained a royalty to the grantors-taxpayers, but did not require the grantee to develop the property. The taxpayers retained no reversionary rights. The provision as to the royalty reserved to taxpayers reads as follows:

" * * * a royalty of ten per centum (10%) of the gross value of all minerals mined, marketed and sold from the premises, said gross value being determined by payments received for all ores including bonuses and freight· allowances but after deduction of actual costs of milling, smelting, treatment, cost of transporting the ores, and imposition of penalties of [sic] any; * * *."

As initial consideration for their transfer, taxpayers received a lump sum payment of $175,000. Taxpayers' mineral lessee assigned his lease outright to Denver-Golden for a lump sum consideration, and retained no royalty.

At the time the minerals were conveyed by taxpayers, some underground development had been done. This included some drifts and tunnel work, some diamond drilling, and trenching. Up to this time about 1200 tons of ore worth about $65,-000, with the bonus payments, had been sold. There appears in the record a detailed report by a geologist who had been connected with the property for some time. This report was submitted to the purchaser about a month before the date of the mineral deed. This report describes in detail the existing workings, the geology of the tract, and the several mineralized veins. The geologist describes the quantity of ore and per cent of mineralization in each of the several areas, and estimates the total of inferred and indicated ore. He then gives the total net value of such ore (after mining and development costs and a ten per cent royalty) at about $1,631,000, and expresses his opinion that the potential. may be much greater.

This court in United States v. White, 311 F.2d 399 (10th Cir.), considered the federal income taxes applicable to the lump sum initial payment to these same taxpayers. We there said: " * * * there was a sale of the minerals, and that the $175,000 payment as part of the consideration therefor, was properly treated as a capital gain for income tax purposes * * *." The court stated that the taxpayers " * * * retained no investment or interest, economic or otherwise, in the minerals in place. The purchaser was free to remove the minerals, or not, as it saw fit." We also there stated: "We do not reach the question of whether the payments to be made from production amount to the reservation of an economic interest which would require a different tax treatment of the income from that source." We have now reached this question, and not only find it difficult to answer but also conclude that to answer it in accordance with the prevailing authorities, we must overrule United States v. White, supra. As will be hereinafter developed the transaction must be examined as a whole and, under the decisions of the Supreme Court, put into· one category. It is tempting to divide the transaction into several steps with different tax consequences, but this cannot be done. The tax category into which the entire transaction must be placed is that of a lease. Under the authorities this characterization rightly or wrongly usually disposes of the regular income-capital gains issue. The court has decided that in overruling United States v. White, it must for the sake of consistency in treatment be guided by the extensive case law developed in the oil and gas field.

The trial court in view of our previous decision in United States v. White held that the royalty reservation was a "deferred payment provision" and was "additional consideration over and above the lump sum payment which was at the time of the execution of the deed promised by the grantees in connection with the purchase by them of the mineral." Thus it afforded capital gains treatment on the royalty.

Our opinion in the previous case refers to several Circuit Court and Tax Court

cases. These cases are primarily concerned with minerals other than oil and gas, and are cases in which the doctrines developed in the oil and gas cases concerning assignments with retained interests are not followed. In these cases the courts, in departing from the oil and gas authorities, have held that the "intent" of the parties leads to a sale conclusion, or that the "dominant purpose" of the transaction, or the "true substance" of the assignments lead to such a departure. Also these cases include instances where the "royalty" payment is on a unit basis unrelated to value of the substance to be removed. These cases include: Barker v. Comm'r of Internal Revenue, 250 F.2d 195 (2d Cir.); Crowell Land & Mineral Corp. v. Comm'r of Internal Revenue, 242 F.2d 864 (5th Cir.); Ima Mines, 32 T.C. 1360; Comm'r of Internal Revenue v. Remer, 260 F.2d 337 (8th Cir.); Linehan v. Comm'r of Internal Revenue, 297 F.2d 276 (1st Cir.); Griffith v. United States, 180 F.Supp. 454 (Wyo.1960); Jeanette Ord Sager, 21 CCH Tax Ct. Mem. 641 (1962); see also United States v. Witte, 306 F.2d 81 (5th Cir.).

In the above cases it is apparent that the courts have avoided the application of the oil and gas cases, or there were present factors making the unit payments something other than royalty. The emphasis has been placed instead upon the intention of the parties, as indicated above, and upon other factors in the particular transactions. As will be hereinafter discussed, there is however no real basis for making a distinction grounded on the nature of the hard mineral transactions as compared to those involving oil and gas. The position of the parties in most of the mineral cases is probably not influenced greatly by the difference in the amount of statutory percentage depletion although the comparatively low rate in the sand and gravel cases may be of some influence.

It is safe to say that the courts which have considered oil assignments or conveyances of oil and gas leases with an ordinary royalty retained by the transferor have uniformly held that the transferor has retained an economic interest, and the royalty income is ordinary income subject to the depletion allowance. Thus it is reasonable to assume that if the transaction before us was an absolute assignment of oil and gas lease, the overwhelming weight of authority would be that the royalty was ordinary income.

The Supreme Court has considered primarily the oil and gas cases which involve the question as to which of the parties is entitled to the depletion allowance, and thus what constitutes an "economic interest."[1] In Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 79, 77 L.Ed. 512, the Court held that a taxpayer had to have an "economic interest" in the oil and gas before he was entitled to the depletion allowance on proceeds received from its sale. Much subsequent litigation has been concerned with trying to define an "economic interest" because the Court has said in effect that if the transferor retained an economic interest, he was entitled to depletion and also that the transaction was not a sale but a lease.

In Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199, the issue was whether a bonus payment paid the lessor upon an oil and gas lease, which reserved the usual royalty, was to be treated as capital gain or ordinary income. The Circuit Court had said that under local law the title to the minerals passed upon delivery of the lease and thus the bonus was consideration for a sale. The Supreme Court held instead that local law could not determine the matter since the tax laws had to be uniformly applied. The Court held that the transaction was

---

1. Comm'r of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347; Kirby Petroleum Co. v. Comm'r of Internal Revenue, 326 U.S. 599, 66 S.Ct. 409, 90 L.Ed. 343; Douglas v. Comm'r of Internal Revenue, 322 U.S. 275, 64 S.Ct. 988, 88 L.Ed. 1271; Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897.

a lease and the bonus was ordinary income subject to the depletion allowance. The Court reviewed the policy relating to capital gains treatment and found it not applicable to any royalties, and the bonus was anticipatory royalty. The Court put all portions of the transaction into one compartment.

The Supreme Court in the oil and gas lease cases has thus held that the retention of a royalty is a retention of an economic interest, and thus the transaction is a lease and not a sale. The Court has also considered several other types of interests granted or retained, such as net profit interests and production payments.[2] The Court has in these applied the rule originated as the depletion test to decide who has the economic interest and thereby decide whether the transaction was a sale or a lease. It does not seem necessary to discuss the many variations in the oil and gas cases since we are here concerned with a straight royalty in a mineral deed.

It is important to give some additional consideration however to Helvering v. Elbe Oil Land Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904, decided in 1933, a few years after Palmer v. Bender and Burnet v. Harmel. In the Elbe case, an assignment of an oil and gas lease was made for a lump sum payment followed by fixed installments together with a net profit interest. The question concerned depletion on the lump sum and the installments. The Supreme Court held this to be a sale. The Court apparently relied upon certain recitations in the assignment of the oil and gas lease to the effect that the parties intended the " * * * full ownership, possession and control of all the properties, * * * shall be vested in [the buyer] and [the seller] shall have no interest in or to said properties * * *." The Court in Burton-

Sutton Oil Co. v. Comm'r, 328 U.S. 25, 66 S.Ct. 861, 90 L.Ed.2d 1062, noted that this provision was a " * * * provision for the transfer of all interest of the assignor."

Other courts have relied upon the language of Elbe, and the Burton-Sutton distinction in opinions concerned with hard mineral cases and have held that a sale has taken place although the seller may have kept some sort of deferred payment. In view of the treatment of the Elbe case by the Supreme Court in subsequent cases we do not consider it as authority for a position contrary to the one we here take.

The concept of "an economic interest" beginning with Palmer v. Bender was used basically to determine whether a taxpayer was entitled to depletion or not; this was its initial purpose as described above. The Court then used the test to decide who had depletion, and thereby to decide whether the transaction concerned was a sale or lease. The holdings were generally that if the transferor had depletion on some of the consideration the transaction was a lease and not a sale. Thus the economic interest test, devised to apply to the consequences of a transfer for the narrow question of the depletion allowance, came to be used to decide whether a transaction was a sale or lease in capital gains cases.

The positions of the parties in oil and gas cases, the approach by text writers, and some of the courts show a preoccupation with the depletion consequences of a transfer.[3] This undoubtedly conforms to the interest of the vast majority of the litigants engaged in the oil and gas business. This preoccupation however does not necessarily conform to the thinking of the litigants in the hard mineral cases where the transactions are by no means as standardized and formal-

2. See our recent case on production payments, Wiseman v. Barby, 380 F.2d 121 (10th Cir.), rev'd 390 U.S. 339, 88 S.Ct. 1097, 19 L.Ed.2d 1218.

3. Rocky Mountain Mineral Law Institute, 1:485; Rocky Mountain Mineral Law Institute, 4:245; Southwest Legal Foundation 18th Institute of Oil and Gas Law and Taxation, p. 598; Texas L.Rev. 42:707, Comment, "Tax Treatment of Mineral Transactions"; Texas L.Rev. 35:307, Article, "The Economic Interest"; Oil & Gas Tax Quarterly, 10:117, Article, "Contingent Deferred Payments."

ized as in the oil and gas business. However there is no clear basis to distinguish the hard mineral cases from the oil and gas cases. The text writers and the courts have presented no reasons to do so. There appears to be nothing significant in the mineral business or the transactions to lead to a different result. As one text writer has said, it appears to be merely a dissatisfaction by some courts with the results which came about from the application of the oil and gas depletion test to decide whether a mineral transaction is a sale or a lease.[4] See also cases not involving depletion.[5]

The problem of course arises where, as in the case at bar, there is this combination of inconsistent tax elements in the transaction. Here an outright mineral deed with no reversion nor development requirements is combined with a royalty reservation. These are inconsistent because they contain elements within the policy considerations for both capital gains and for regular income treatment. The courts have struggled to put the entire transaction into one category as suggested by the Supreme Court.

To be consistent with the usual approach of the courts that there is but one transaction, and to be consistent with our previous opinion in the prior case holding that there was a sale, it would appear that we should hold that the royalty is just part of the consideration for the transaction. Also that it was a sale although no total price was fixed and the instalment portion is computed, not on a flat price per ton, but on a percentage of what the transferee realizes on a sale of the ore mined.

To this court sitting en banc, the royalty does not appear to be part of the consideration for a sale under the weight of the authorities considering both hard mineral and oil and gas cases. The lack of a total price plus the continued participation by the transferor in the risks of the mining make this especially hard to so hold. The elements are particularly strong, especially the continued participation by the appellants in the risk of the venture. The reason for a retained royalty is usually to provide a hedge by the parties against an under or over estimate of the amount of ore. In the hard mineral field it is difficult to estimate recoverable ore as ore values are difficult to measure, mining costs can vary greatly depending on underground conditions, the market may be uncertain, and the amenability of ores is often a difficult matter to anticipate. Some of the consideration in this transaction is within the capital gains policy (bunching of income, locked-in concept, incentive policy), and some in the regular income policies (continuation of risk, no bunching of income, and proceeds from an enterprise).

When this entire transaction is examined the absence of a total price plus the continued participation by the appellants stand out very sharply; however it is not these alone which determine the result but they do put the case within the oil and gas authorities and dictate the overruling of United States v. White, supra. The transaction before us is thus a lease for these tax purposes and the appellants must treat the royalty payments as ordinary income. They are subject to depletion if the prerequisites exist.

The case is reversed and remanded to the trial court for further proceedings in accordance herewith.

4. The American Law of Mining, Rocky Mountain Mineral Law Foundation, § 28.-107.

5. Dairy Queen of Okla. v. Comm'r of Internal Revenue, 250 F.2d 503 (10th Cir.). See Mertens, Law of Federal Income Taxation, §§ 24.23, 24.63, and note p. 251, ch. 22. See Comm'r of Internal Revenue v. I. A. O'Shaughnessy, Inc., 124 F.2d 33 (10th Cir.); Hammonds v. Comm'r of Internal Revenue, 106 F.2d 420 (10th Cir.).