**James T. COX, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 73-2322.**

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1974.

Decided May 22, 1974.

---

William S. Estabrook, III, Atty., Tax Div., U. S. Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Grant W. Wiprud, Attys., Tax Div., U. S. Dept. of Justice, James F. Companion, U. S. Atty. on brief) for appellant.

Boyd L. Warner, Clarksburg, W. Va. (Stathers & Cantrall, Clarksburg, W. Va., on brief) for appellee.

Before WINTER, BUTZNER and FIELD, Circuit Judges.

FIELD, Circuit Judge:

This appeal presents the question whether the retention of an overriding royalty interest incident to the assignment of certain oil and gas leases constitutes an "economic interest" which subjects the initial lump sum payments to ordinary income treatment rather than capital gains consideration.

In 1959 A. T. Carr leased 1,194 acres of oil and gas lands in Doddridge County, West Virginia, for one dollar per acre. In 1960 the appellee, James T. Cox, entered into an informal agreement with Carr under which he

would contribute $2,000 for the development of a well in exchange for a half interest in all of the leases. Spurred by successful drilling operations on adjacent land, the partnership assigned ten leases to various companies for $180,125 in 1963 and $115,000 in 1964. Cox and Carr shared the proceeds equally, and the partnership retained a $\frac{1}{16}$th overriding royalty interest [1] of the $\frac{7}{8}$th working interest [2] in each of the ten leasehold assignments. Additionally, the partnership retained a $\frac{1}{4}$th working interest, subject to the reserved overriding royalty interest, in one lease.

Cox treated his share of the profits as a long-term capital gain on his 1963 and 1964 tax returns. The Commissioner of Internal Revenue viewed the profits as ordinary income subject to a depletion allowance and assessed deficiencies of $12,156.17 plus $1,776.72 interest for 1963 and $5,556.63 plus $478.70 interest for 1964. Cox paid the deficiencies and sought a refund which was denied. He then instituted this action pursuant to 28 U.S.C. § 1346(a)(1) for recovery of the alleged overpayment. The district court granted judgment in favor of Cox and the government appeals.

The test for determining what is an economic interest first appeared in Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933), and is now found in Treas.Reg. § 1.611–1(b)(1) (1960):

"An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place * * * and secures, by any form of legal relationship, income derived from the extraction of the mineral * * * to which he must look for a return of his capital."

The district court held the lump sum payments were subject to capital gains treatment because they were not dependent upon the extraction or production of oil and therefore did not fall within the scope of the treasury regulation. The record, however, does not support this bifurcated view of the transaction. Each of the ten leases assigned by the partnership is inextricably bound by a reserve clause which grants the partnership a $\frac{1}{16}$th overriding royalty interest, and in one of the ten leases, a $\frac{1}{4}$th working interest, subject to the reserved overriding royalty interest of the $\frac{7}{8}$th working interest. Accordingly, income from the royalty interests is tied directly to oil and gas production.

Assuming, however, that the two lump sum payments here in question were independent of the retained royalty interests, substantial authority denies them the benefit of capital gain treatment. In Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932), the issue was whether a lump sum bonus paid the lessor under an oil and gas lease, which reserved the usual royalty, was to be treated as capital gain or ordinary income. The Court put all portions of the transaction into one category, viewing the bonus as anticipatory royalty which should be treated as ordinary income. In Herring v. Commissioner, 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389 (1934), the Court held that the depletion allowance was applicable to advance royalties and bonuses received by a lessor upon the execution of an oil and gas lease

---

1. A royalty interest is a right to receive a specified percentage of all oil and gas produced during the lease. 3B Mertens, Law of Federal Income Taxation, § 22.37 at 329 (1973). If the owner of an oil and gas lease transfers it to another operator, retaining a share of the production, usually $\frac{1}{16}$th, free of expense other than severance tax, this retained interest is called an overriding royalty. It differs from a landowner's royalty in that it stems from the lease

and terminates with the lease. Acquisition of Oil and Gas Properties, 21 Oil & Gas Tax Q. 1, 10 (L. Fiske ed. 1972).

2. An oil and gas lease ordinarily conveys the entire mineral interest less any royalty interest retained by the lessor. The owner of the lease is said to own the "working interest" because he has the right to develop and produce the minerals. Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 261 n. 1, 78 S. Ct. 691, 692, 2 L.Ed.2d 743 (1958).

even though there were no wells on the property and no production during the taxable year. Finally, in Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 78 S. Ct. 691, 2 L.Ed.2d 743 (1958), the Court decided that the consideration received for the assignment of an "oil payment right" carved out of a larger mineral interest (whether a royalty interest or a working interest) was taxable as ordinary income, subject to a depletion deduction, and not as a capital gain. The Court reasoned that "[t]he lump sum consideration seems essentially a substitute for what would otherwise be received at a future time as ordinary income." 356 U.S., *supra*, at 265.

In reaching the conclusion that Cox did not retain an economic interest the court below made no reference to the foregoing decisions, but relied primarily on Helvering v. Elbe Oil Land Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904 (1938), and Commissioner v. Remer, 260 F.2d 337 (8 Cir. 1958). We find, however, that *Elbe* has been considerably diluted by subsequent decisions and is of little precedential persuasiveness. In *Elbe*, the taxpayer sold all of its interest in certain oil and gas properties in consideration of a large initial lump sum payment, four substantial deferred payments which were payable without regard to production, and a residual interest in the net profits from production and operation of the properties.[3] The Court denied the taxpayer a depletion deduction computed on the cash payments, holding that the transaction was an absolute sale of the taxpayer's interest in the property. With reference to the taxpayer's participation in the net profits, the Court stated that it was "unable to conclude that the provision

for this additional payment qualified in any way the effect of the transaction as an absolute sale or was other than a personal covenant of the [purchaser]." 303 U.S., *supra*, at 375.

Eight years after *Elbe*, in Burton-Sutton Oil Co., Inc. v. Commissioner of Internal Revenue, 328 U.S. 25, 66 S.Ct. 861, 90 L.Ed. 1062 (1946), the Court concluded that where the assignor of certain oil rights retained an interest in the net operating profits, the transaction was not a sale but rather an assignment "with a reservation in the assignor of an economic interest in the oil." *Id.*, at 37. The Court attempted to distinguish rather than overrule its decision in *Elbe*, concluding that "the holding of *Elbe* should not be extended to the facts of this agreement." *Id.*, at 36.[4] In Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956), the Court again declined to follow *Elbe*, holding that the retention of a share of net profits was an economic interest in the oil in place which entitled the taxpayer to the depletion allowance. The moribund state of *Elbe* was recognized by the Tenth Circuit in Commissioner of Internal Revenue v. Pickard, 401 F.2d 615 (1968), with the observation that "[t]he Supreme Court in Burton-Sutton appears to have limited Elbe to its particular facts, as did Comm'r. v. Southwest Exploration Co. * * *." *Id.*, at 616.

Similarly, the Eighth Circuit's decision in Commissioner v. Remer, *supra*, which involved the sale of "stockpiled iron ore mining leases" and was decided largely on the basis of *Elbe*, has been limited to its particular facts. *See* Wood v. United States, 377 F.2d 300 (5

3. A net profits interest is a share of gross production measured by net profits from operation of the property. Like the overriding royalty it is created from the working interest, and the net profits interest differs from other production-measured payments in that it represents a fractional share of the profit of the operating company, rather than a fractional share of the minerals themselves as produced. Comment, Sale or Lease: Cap-

ital Gain or Ordinary Income Subject to Depletion in Mineral Transactions, 32 La.L.Rev. 417, 424 n. 30 (1972).

4. In a separate opinion, Mr. Justice Frankfurter criticized the "gossamer" distinctions drawn by the majority between *Elbe* and *Burton-Sutton*, "which hardly can be held in the mind longer than it takes to state them * * *." 328 U.S. at 38.

Cir.), cert. denied 389 U.S. 977, 88 S.Ct. 465, 19 L.Ed.2d 472 (1967); Rabiner v. Bacon, 373 F.2d 537 (8 Cir. 1967).

To accept the taxpayer's contention that the reserve clause should be divorced from the alleged fractional sale of a capital asset would place us in the situation which confronted the Tenth Circuit in United States v. White, 311 F.2d 399 (1962), overruled 401 F.2d 610 (10 Cir. 1968). In *White* the taxpayers received a payment of $175,000 plus a ten per cent royalty of the gross value of all uranium mined from the property. In its initial opinion the court held that the lump sum payment was part of the consideration paid for the sale of the minerals and was properly treated as a capital gain since the taxpayers had retained no economic interest in the minerals in place. Six years later the same taxpayers sought to have the royalty payments taxed at capital gain rates rather than ordinary income. Sitting in banc, the court found that the absence of a total price plus the continued participation by the taxpayers in the mineral production made the transaction a lease and not a sale thereby subjecting the royalty payments to ordinary income treatment. In overruling its prior decision the court stated:

"As will be hereinafter developed the transaction must be examined as a whole and, under the decisions of the Supreme Court, put into one category. It is tempting to divide the transaction into several steps with different tax consequences, but this cannot be done. The tax category into which the entire transaction must be placed is that of a lease." 401 F.2d, *supra*, at 611.

We conclude that in the transactions before us Cox retained an economic interest in the oil and gas which requires that the lump sum payments be taxed as ordinary income subject to the depletion allowance and not as capital gains. Accordingly, the judgment of the district court is reversed and the case remanded with instructions to enter judgment in favor of the government.

Reversed and remanded.