Crumes H. DUNN and Ruth Adele Dunn, Appellants,

v.

UNITED STATES of America, Appellee (two cases).

DUNN–McLEAN ENTERPRISES, INC., Appellant,

v.

UNITED STATES of America, Appellee.

Allie McLEAN, for herself, and as Devisee of R. L. McLean, Deceased, Appellant,

v.

UNITED STATES of America, Appellee (two cases).

Nos. 9253–9257.

United States Court of Appeals Tenth Circuit.

Sept. 30, 1968.

Rehearing Denied Jan. 20, 1969.

Charles Dunn and Dennis I. Meyer, Tulsa, Okl. (Andre M. Saltoun, Tulsa, Okl., with them on the brief), for appellants.

Grant W. Wiprud, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Martin T. Goldbaum, Attys., Dept. of Justice, Washington, D. C., B. Andrew Potter, U. S. Atty., of counsel, with him on the brief), for appellee.

Before JONES*, BREITENSTEIN and SETH, Circuit Judges.

* Of the Fifth Circuit, sitting by Designation.

SETH, Circuit Judge.

This appeal involves five consolidated actions to recover income taxes for the years 1958 and 1959 under 28 U.S.C. § 1346(a) (1).

The record shows that the appellants Dunn and McLean were engaged in the Dairy Queen business in northern Oklahoma under subfranchises which they had purchased from the state franchise holder. They had undertaken to pay 28 cents per gallon on the Dairy Queen mix used in the subfranchise operation to the state franchise holder for certain months of each year, and 17 cents per gallon for other months. Appellants Dunn and McLean organized a corporation, Dunn-McLean Enterprises, Inc., and assigned to it four of their subfranchises. The corporation agreed to pay the assignors the sum of 20 cents per gallon of the Dairy Queen mix used in the outlets transferred, and also agreed to assume the conditions of the agreement with the state franchise holder, including the payment of the 28 cent and 17 cent gallonage payments above described. The individuals Dunn and McLean controlled the corporation following its organization.

The individual appellants, beginning with the calendar year 1958, in their income tax returns treated the 20 cent per gallon payment by the corporation to them as capital gain. The corporation in its returns charged the 20 cent per gallon payment to the individuals and the additional gallonage payment to the state franchise holder as annual expense items.

The district court found that the transfer of the subfranchises to the corporation by the individual appellants was not a reasonable and fair transaction as compared to one entered into with parties dealing at arm's length, and found that it was an improper anticipatory arrangement among related individuals and the controlled corporation to convert distribution of future corporate earnings into capital gains. See the trial court's opinion at 259 F.Supp. 828.

The court further found that the gallonage payments made by the corporation to the state franchise holder represented the cost of a capital asset, and could not be charged as an expense nor could they be deducted as depreciation.

On this appeal, two questions remain. The first is whether the trial court was in error in its finding that the assignment of the subfranchises to the corporation controlled by the assignors was a device to withdraw corporate earnings as capital gains. The second question is whether the district court erred in holding that the subfranchises are not depreciable. The appellants have abandoned the position taken in their initial return that the gallonage payments may be treated by the corporation as expense items and are asserting only that the payments may be treated as depreciation.

■ As to the first question concerning the transfer of the subfranchises to the corporation, the finding of the trial court that the transaction was not a bona fide one is supported by substantial evidence. The record shows that the arrangement was to use gallonage payments to divert what otherwise would have been corporate earnings. The individual appellant Dunn testified before the trial court to the effect that the 20 cents per gallon figure was not based upon the realities nor the experience in the operation of the subfranchises transferred. He testified that the individuals did not examine the profit and loss figures, and that they had adopted 20 cents from a suggestion of their lawyer as it was used in the original Dairy Queen cases which came before this court in Dairy Queen of Oklahoma, Inc. v. Comm. of Internal Revenue, 250 F.2d 503 (10th Cir.). The record also shows that 20 cents per gallon was not in accord with the transfer of other franchises, and the appellants here involved had never entered into a transaction in which any outlet was required to pay a gallonage fee in excess of the amount due the state franchise holder. There is no evidence in the record pertaining to the transfer of other subfranchises where the gallonage fee is above that payable to the state franchise holder. The trial court found

that no reasonable purchaser dealing at arm's length would pay the additional 20 cent payment on the transfer of a franchise. The record further shows that the franchises transferred to the corporation had been losing money for the last several years. In substance the record shows, and the trial court found, that the 20 cents fee to be paid by the corporation to the individual appellants would more than withdraw any possible profits from the operation of the stores for the foreseeable future. We conclude that the court's finding was supported by the evidence, and consequently the transfer was not fair and reasonable and was an attempt to convert income into capital gain.

The remaining issue relates to the treatment by the corporate appellant of the payments it undertook to make to the holder of the state franchise. These payments, as above indicated, were 28 cents per gallon of the mix used for certain months of the year and 17 cents per gallon for the remaining months. The corporation asserts in its appeal that it is entitled to deduct annually these payments as depreciation. The trial court held that these payments were made in exchange for intangible capital assets, and that no depreciation allowance was permitted because the assets had an indefinite and unascertainable useful life.

Treasury regulations (section 1.167 (a)–3), based on the 1954 Internal Revenue Code, provide that intangibles may be depreciated if the period of use in the business can be estimated with reasonable accuracy. The regulation refers, by way of example, to patents and copyrights but continues: "An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation." The regulation thus contrasts and treats separately intangibles the life of which may be estimated with reasonable accuracy with those the useful life of which is not "limited."

We held in the original Dairy Queen case (Dairy Queen of Oklahoma, Inc. v. Comm. of Internal Revenue, 250 F.2d 503), which incidentally was the first case decided on the issue, that the assignment of the subfranchises from the holder of the state franchise in the particular instance constituted a sale; and that the lump sum payments received therefor, together with the gallonage payments, were both part of the purchase price and were subject to capital gains treatment. The dissent in the case took the position that the transaction was not a sale but only a licensing of the franchise. That decision is not challenged in this action by the Government. In its brief, the Government makes this statement at page 14:

> "Although we do not agree with that decision, we elected below not to seek for a reconsideration and feel bound by that election in this appeal. However, we reserve the right, in the light of conflicting decisions of other Courts of Appeals, to request reconsideration in future cases."

Thus this appeal does not present a reconsideration of the original Dairy Queen case. See United States v. White, 401 F. 2d 610, Tenth Circuit.

■ The life of the franchise under the assignment agreement here used is clearly of an undetermined length as it may be ended by the assignee by nonpayment of the gallonage charges or by a voluntary surrender of the franchise. It may also be ended by the assignor if the assignee violates the agreement, but otherwise it continues in perpetuity. The term of the franchise is not related to the life of patents on the machinery provided nor to any other established periods. Since it is of such duration, the portion of the regulations pertaining to intangibles of undetermined life is applicable. We do not consider the doctrine to be limited to lump sum purchases as urged by appellee, and thus not applicable to these fee payments related to volume. The trial court was correct in its holding that depreciation was not allowable. The payments become part of the basis of the property. United States v. Catto, 384 U.S. 102, 86 S.Ct. 1311, 16 L.Ed.2d 398. The specific treatment afforded trademarks, patents, and trade names is not

extended by the regulations to the interest here considered. The statutes permit this treatment by the regulations. Klein v. Comm. of Internal Revenue, 372 F.2d 261 (2d Cir.).

Affirmed.