K. E. and Z. M. McAFEE, Husband and Wife, John W. and Mary D. Nichols, Husband and Wife, William N. and Helen K. Little, Husband and Wife, Louis R. and Inez P. Wilson, Husband and Wife, Joe F. and Marion G. Gibson, Husband and Wife, and W. M. and Mary E. Avery, Husband and Wife, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 105–70.

United States Court of Appeals, Tenth Circuit.

Oct. 5, 1970.

Gary F. Fuller, Oklahoma City, Okl. (John B. Dudley and McAfee, Dudley, Taft, Cates & Mark, Oklahoma City, Okl., of counsel, on the brief), for plaintiffs-appellees.

Grant W. Wiprud, Atty., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., and Lee A. Jackson, Atty., Dept. of Justice, and William R. Burkett, U. S. Atty., of counsel, on the brief), for defendant-appellant.

Before JONES,* BREITENSTEIN, and HOLLOWAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In an action for refund of federal income taxes, the district court held that a transaction relating to oil and gas leases was a sale with proceeds in issue taxable as capital gains. The United States appeals and contends that such proceeds are taxable as depletable ordinary income.

The facts are stipulated. The taxpayers owned undivided interests in oil and gas leases which they agreed to sell to Island Oil Company. They were to receive $180,000 in cash and a production payment of $320,000 payable, with interest, out of 80% of ¾ths of all oil and gas produced, saved, and sold. Additionally, after Island recouped the $180,000 plus $320,000, together with costs of exploration and development, the taxpayers were to receive monthly sums equivalent to $1.25 per barrel for oil produced, saved, and sold until $200,000 had been paid. A vendors' lien on personal property was reserved to secure payment of the $200,000.

Island requested that Second Tarrant Foundation be allowed to participate. At the closing, attended by all parties, the taxpayers assigned the leases to Island and the production payment of $320,000 to Tarrant. In return they received $180,000 from Island and $320,000 from Tarrant. The assignment to Island did not contain an obligation to develop. Production has been sufficient to pay both the $320,000 and the $200,000. The district court held that the assignments to Island and Tarrant were a single sale which covered all of the taxpayers' interest, that the assignment to Tarrant was not a sale of a carved-out oil payment on production, and that the deferred payments were a personal covenant or obligation of Island.

We are concerned with the tax treatment to be given the $320,000 paid by Tarrant to the taxpayers. The Supreme Court has developed the concept of a retained economic interest to determine whether proceeds from oil and gas transactions are taxable as depletable ordinary income or as capital gain. We considered those decisions in United States v. White, 10 Cir., 401 F.2d 610, and Commissioner of Internal Revenue v. Pickard, 10 Cir., 401 F.2d 615. No purpose would be served by retracing our steps. We recognized

---

* Of the Fifth Circuit, sitting by designation.

the retained economic interest rule and held that Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904, upon which the taxpayers rely, is limited to its particular facts. Pickard, supra, 401 F.2d, p. 616. We noted Commissioner of Internal Revenue v. Remer, 8 Cir., 260 F.2d 337, cited by the taxpayers, and declined to follow it. White, supra, 401 F.2d, p. 612. If the sum received by taxpayers from Tarrant is a carved-out oil payment resulting from the retention of an economic interest, the proceeds are taxable as depletable ordinary income. See Commissioner of Internal Revenue v. P. G. Lake, Inc., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743. Cf. Wiseman v. Barby, 10 Cir., 380 F.2d 121, reversed 390 U.S. 339, 88 S.Ct. 1097, 19 L.Ed.2d 1218. The tax consequences of the transaction before us depend on whether the taxpayers retained an economic interest.

The taxpayers emphasize the terms of the Island assignment as proof that they intended, and made, but one sale. That instrument recites the intent of the taxpayers to sell all of their interest in the oil and gas "excepting only the production payment described in paragraph 2 [relating to the $320,000 payment] * * *," and recognizes the simultaneous sale of the production payment to Tarrant. It is true that the Island and Tarrant transactions occurred contemporaneously but, in our opinion, they do not constitute a single sale. Island and Tarrant did not join as co-purchasers of taxpayers leasehold interests. The reservation in the Island assignment of the $320,000 production payment created a new interest which the taxpayers transferred to a third party, Tarrant, by separate instrument. There were two transactions with unrelated parties and transfers of entirely different interests. The fact that both of the transactions were on the same day is immaterial.

The carve-out was by taxpayers, not by Island. The immediate payment of the $320,000 by Tarrant did not change this situation. The taxpayers simply sold to Tarrant their right to future income to be received from oil production. We have held that money paid to a taxpayer to reimburse him for the loss of future earnings is taxable as ordinary income. See Elliott v. United States, 10 Cir., 431 F.2d 1149.

The statement in the Island assignment that the taxpayers sold all of their interest in the oil and gas does not control. Actually, the taxpayers reserved an economic interest consisting of two production payments, one of $320,000 and one of $200,000. The simultaneous sale of the $320,000 payment did not divest the taxpayers of their entire interest. They still retained their right to the payment to be made subsequently. The argument that such payment was a personal covenant or obligation of Island is not persuasive. The instrument provides that the monthly payments shall be made "only as, if and when such oil is so produced," and that Island does not guarantee sufficient production to pay off the $200,000. This negates any idea of a personal covenant to pay the agreed sum. The measurement of the payments by a fixed sum per barrel does not change the situation. The payments are entirely dependent on production. The retention of the vendors' lien is immaterial. It secures the payments due from production and does not secure them without regard to production. We have rejected the contention that absence of an obligation on the part of the assignee to develop indicates a sale. Commissioner of Internal Revenue v. Pickard, 10 Cir., 401 F.2d 615, 616. In our opinion the taxpayers retained an economic interest, and the proceeds from the sale to Tarrant of the carved-out oil production payment are taxable as depletable ordinary income.

Reversed.