T.C. Memo. 2013-272

UNITED STATES TAX COURT

MICHAEL H. DUDEK AND BRENDA M. DUDEK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9599-12.                    Filed December 2, 2013.

Michael H. Dudek and Brenda M. Dudek, pro se.

Carrie L. Kleinjan and Emerald G. Smith, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge: Respondent determined a $147,397 deficiency in

petitioners' 2008 Federal income tax and a $29,479.40 accuracy-related penalty

[*2] under section 6662(a).[1] The issues for decision are: (1) whether the payment received by petitioners pursuant to an oil and gas lease agreement is taxable as ordinary income or as a capital gain; (2) whether petitioners are entitled to a depletion deduction; and (3) whether petitioners are liable for an accuracy-related penalty under section 6662(a) for a substantial understatement of income tax.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioners resided in Pennsylvania.

Michael H. Dudek (petitioner) is a certified public accountant licensed in Pennsylvania and an attorney licensed to practice law in Pennsylvania.

On January 24, 1996, petitioners purchased 100 acres in Pennsylvania for $47,000. This property was subject to an oil and gas lease with the Ohio Lease Development Co. which expired on or about March 14, 2002. On January 24, 1996, petitioners purchased 201.5 acres in Pennsylvania for $148,000. This property was also subject to an oil and gas lease with the Ohio Lease Development Co. which expired on or about March 14, 2002. On May 27, 1998, petitioners

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] purchased 51.8 acres in Pennsylvania for $30,000.  In total, petitioners own approximately 353.3 acres in Pennsylvania.

On October 23, 2008, petitioners entered into an oil and gas lease agreement (Agreement) with EOG Resources, Inc. (EOG), in connection with petitioners' 353.3 acres in Pennsylvania (property).  Under the terms of the Agreement, EOG can develop the property and drill for, extract, and sell any gas and oil discovered on the property.  EOG bears the entire cost of exploration, development, and operation of the property with respect to the production of oil and gas.  Under the terms of the Agreement, petitioners are entitled to a royalty payment equal to 16% of the net profits of any oil and gas extracted from the property.

The primary term of the Agreement is five years.  The term of the Agreement is automatically extended as long thereafter as either oil or gas is being produced from the property.  The term of the Agreement will also be extended if EOG shuts in[2] any of the wells.  If any well is shut in, EOG must pay petitioners $1 per acre per year.  Paragraph 17 of the Agreement provides that the term may be extended for an additional five years.  To exercise the option for the five-year

---

[2]A "shut-in" is the temporary closure of a producing well, for repair, cleaning out, building up reservoir pressure, or a lack of a market.  See Howard R. Williams & Charles J. Meyers, Manual of Oil and Gas Terms 1058 (12th ed. 2003).

**[*4]** extension, EOG would be required to pay petitioners an extension payment of $2,500 per acre covered by the extended term.

In 2008 T.S. Calkins & Associates (Calkins), on behalf of EOG, tendered to petitioners a payment of $883,250 to induce them to enter into the Agreement. The payment was not dependent on any extraction or production of oil or gas. Calkins transmitted a Form 1099-MISC, Miscellaneous Income, to respondent, which reported that Calkins had paid petitioners $883,250 in 2008. Petitioners reported the $883,250 payment as a long-term capital gain on their 2008 Federal income tax return.

On January 17, 2012, respondent issued to petitioners a notice of deficiency for 2008. Petitioners timely filed a petition disputing the determinations in the notice of deficiency.

## OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

[*5] 1. <u>Whether the $883,250 Payment Is Ordinary Income or Capital Gain</u>

Petitioners argue that the $883,250 payment (hereinafter bonus payment[3]) they received as an inducement to enter into the Agreement should be taxed as a long-term capital gain. Respondent argues that the bonus payment constitutes ordinary income.

The Supreme Court has held that the receipt of a bonus payment by a lessor pursuant to an oil and gas lease is taxable as ordinary income, not as gain from the sale of capital assets. <u>Burnet v. Harmel</u>, 287 U.S. 103, 104, 112 (1932).

To avoid ordinary income treatment for the bonus payment, petitioners argue that the Agreement was not a lease but was in substance a sale of their rights to any oil and gas on the property. We must determine if the Agreement was a lease.

"Where the owner of the land retains an economic interest in the deposits, the transaction is regarded as a lease and the proceeds are taxable as ordinary income". <u>Laudenslager v. Commissioner</u>, 305 F.2d 686, 690 (3d Cir. 1962), <u>aff'g</u> T.C. Memo. 1961-85; <u>see also</u> <u>Cox v. United States</u>, 497 F.2d 348, 352 (4th Cir. 1974). A lessor has an economic interest "if, by virtue of the leasing transaction,

---

[3]A bonus in the oil and gas industry is defined as a "payment that is made in addition to royalties and rent as an incentive for a lessor to sign an oil-and-gas lease". Black's Law Dictionary 206 (9th ed. 2009).

**[\*6]** he has retained a right to share in the oil produced." Palmer v. Bender, 287

U.S. 551, 557 (1933). Retention of an economic interest does not turn on the

draftsmanship of the contract but instead on the economic realities of the

transaction. See Deskins v. Commissioner, 87 T.C. 305, 314 (1986).

Under the Agreement, petitioners are entitled to royalty payments equal to

16% of the net profits of any oil or gas extracted from the property. Petitioners'

royalty interest retains for them the right to share in the proceeds of any oil or gas

extracted from the property.[4] "The principle is well settled that the holder of a

royalty interest in natural resources possesses an economic interest in the minerals

in place." Kittle v. Commissioner, 21 T.C. 79, 87 (1953), aff'd, 229 F.2d 313 (9th

Cir. 1956); see also Palmer, 287 U.S. at 557.

Petitioners' royalty interest constitutes an economic interest because it

bestows on them the right to share in the proceeds of any oil and gas extracted

from the property. As a result, the transaction is regarded as a lease. Furthermore,

we note that the Agreement does not reflect the economic realities of a sale. A

sale would be evidenced by an exchange of a determinable quantity of oil and gas

for a determinable price. The Agreement does not speak to the quantity of oil and

---

[4]"A royalty interest is a right to receive a specified percentage of all oil and gas produced during the lease." Cox v. United States, 497 F.2d 348, 350 n.1 (4th Cir. 1974).

**[*7]** gas to be transferred to the lessee. Instead, the Agreement provides that the lessee (EOG) may extract oil and gas for a period of time in exchange for royalty payments based on the oil and gas that is actually extracted during the term of the Agreement. An agreement that provides the transferor with a bonus payment and royalty payments for the minerals extracted is properly classified as a lease, not a sale. See Laudenslager v. Commissioner, 305 F.2d at 691 ("[A] transaction is not considered a sale where, for example, the transferor reserves a royalty of a percentage of the minerals to be produced, or where, in addition to reserving a royalty, he receives a cash bonus payment."). As a result, we find that the Agreement petitioners and EOG entered into is properly classified as a lease. Accordingly, we hold that the $883,250 bonus payment is taxable as ordinary income, not capital gain.

2. Depletion Deduction

In the petition, petitioners argue that if the Court determines the $883,250 bonus payment is taxable as ordinary income, then the Court should hold that they are entitled to a percentage depletion deduction of $132,488. Respondent argues that petitioners are not entitled to a deduction for percentage depletion or for cost depletion.

[*8] Section 611(a) provides that under the regulations prescribed by the Secretary, a reasonable allowance for depletion is to be allowed in computing the taxable income derived from oil and gas wells. Ordinary income from an oil and gas well may be eligible for cost depletion under section 612 or percentage depletion under section 613A.

Section 613A(d)(5) provides that percentage depletion for income from oil and gas wells does not apply to "any lease bonus, advance royalty, or other amount payable without regard to production from property." See also sec. 1.613A-3(j), Income Tax Regs. The $883,250 bonus payment paid to petitioners was to induce them to enter into the Agreement; it did not relate to any extraction or production of oil and gas. As a result, the $883,250 payment is not eligible for percentage depletion.

Bonus payments are eligible for cost depletion. See sec. 1.612-3(a)(1), Income Tax Regs. The amount of the cost depletion is calculated from the taxpayer's basis for depletion, the amount of the bonus payment, and the royalties the taxpayer expects to receive. See id. Petitioners did not provide any evidence as to the amount of royalties they expect to receive. As a result, it is not possible for the Court to calculate the amount of petitioners' cost depletion. Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they

[*9] are entitled to any deduction claimed.  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  Petitioners have failed to meet this burden.  Accordingly, we hold that petitioners are not entitled to a deduction for cost depletion.

3.  <u>Accuracy-Related Penalty</u>

Respondent determined that petitioners were liable for a section 6662(a) accuracy-related penalty of $29,479.40 for the taxable year 2008.  Section 6662(a) imposes an accuracy-related penalty equal to 20% of the underpayment to which section 6662 applies.  Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, a substantial understatement of income tax.  Sec. 6662(b)(2).

Section 7491(c) provides that the Commissioner bears the "burden of production" with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose the penalty.  See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001).  Once the Commissioner meets his "burden of production", however, the "burden of proof" remains with the taxpayers, including the burden of proving that the penalty is inappropriate because of reasonable cause under section 6664.  See Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447.

[*10]   There is a substantial understatement of income tax for any taxable year if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A). On their 2008 joint Federal income tax return petitioners reported tax of $103,422. Petitioners' deficiency in income tax for the taxable year 2008 is $147,397. Thus, the understatement of income tax exceeds the greater of 10% of the tax required to be shown on petitioners' return ($103,422 tax reported on the return + $147,397 deficiency = $250,819; 10% of $250,819 = $25,082) or $5,000. Therefore, petitioners' understatement is substantial. Consequently, we conclude that respondent has met his burden of production with respect to petitioners' substantial understatement of income tax.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. See Higbee v. Commissioner, 116 T.C. at 448. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners have the burden of proving that the penalty is inappropriate because of reasonable cause

**[\*11]** under section 6664. <u>See</u> Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447. Petitioners have failed to prove that the penalty is inappropriate because of reasonable cause.

Accordingly, we hold that petitioners are liable for the accuracy-related penalty under section 6662(a) for their underpayment of tax for the 2008 tax year.

In reaching our decision, we have considered all arguments made by the parties. To the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.